FRANCIS HAIR, PLAINTIFF IN ERROR, V. THE STATE OF
NEBRASKA, DEFENDANT IN ERROR.

1. **Statutes:** REPEAL OF CRIMINAL LAW: EFFECT OF AMEND-
MENT. The repeal of a criminal law by an amendatory act
which changes the repealed act only by reducing the punish-
ment, where the repeal and re-enactment were intended to con-
tinue in force the uninterrupted operation of the old statute, will
apply to crimes committed before the new act took effect, and
the offender may be punished under the law as amended. *State
v. Wish,* 15 Neb., 448, followed and approved.

2. **Trial:** VERDICT. The fact that a man was seen to enter, through
a window, a room in which a jury had been sent to deliberate,
without proof that the jury were still in the room, will not in-
validate a verdict subsequently returned by the jury, where it
is shown by the testimony of the jurors that no person, other
than the jurors and bailiff, entered the room in which the jury
were actually confined during their deliberations.

3. ————: ABSENCE OF PRISONER. The voluntary withdrawal of
a prisoner from the court room during the progress of his trial,
and during the examination of a witness, will not entitle him
to a new trial on account of his absence, when it is shown that
upon his absence being discovered all further proceedings were
suspended until his return, which was but a few minutes, and
upon his return the witness was re-examined covering the ques-
tions asked during the absence of the prisoner.

4. ————: EXCEPTIONS. In order to obtain a review of the pro-
ceedings of the district court during a trial there must be an
adverse ruling by such court and an exception thereto.

5. ————: EVIDENCE OF WITNESS DECEASED SINCE FORMER TRIAL.
Where a deceased witness testified upon a former trial of the
same party for the same offense, being brought "face to face"
with the accused and cross-examined by him, it is competent,
upon a subsequent trial, to prove the testimony of such deceased
witness, and such proof does not violate the provisions of the
constitution of the state which gives to the accused the right to
"meet the witnesses against him face to face."

6. ————: ————: EVIDENCE OF COURT REPORTER AT FORMER
TRIAL. Where a court reporter is sworn as a witness for the
purpose of proving the testimony of a deceased witness, and

where such reporter testifies that the notes of the testimony of such deceased witness were accurately taken by him at the time the testimony was given, such notes may be used by the reporter in giving the testimony of the deceased witness, for the purpose of refreshing his memory, and if necessary he may read the testimony to the jury.

7. Evidence in the case examined and held sufficient to sustain the verdict of the jury.

ERROR to the district court for Kearney county. Tried below before GASLIN, J.

*Burr & Parsons,* for plaintiff in error.

*Isaac Powers, Jr., Attorney General,* for the state.

REESE, J.

This is a proceeding to review the judgment of the district court of Kearney county, by which the plaintiff in error was convicted of the crime of horse-stealing. The errors alleged by plaintiff in error will be noticed in their order.

The first point presented is, that the indictment was presented at the October term, 1882, charging the commission of the offense on the 16th day of May, 1882, and that on the 18th day of October, 1883, and after the repeal of the law which made the act criminal, and which was done June 1st, 1883, plaintiff in error was put upon his trial and convicted.

This question arose in the case of *The State v. Peter Wish,* 15 Neb., 448, and was decided adversely to the position assumed by plaintiff's counsel. Upon a re-investigation of the question we are satisfied with the decision in that case. The only change made in the law was to the benefit and advantage of plaintiff in error, the punishment having been decreased. This question also received the attention of this court in *Marion v. The State, ante* p. 349. In this action of the district court there was no error.

The next question presented is, that while the jury were deliberating upon their verdict a man was seen to enter "the court house through the open window thereof, into the room where the said jury had been sent by said court, and ordered to be kept during their deliberation of the case aforesaid." Upon this point we find the affidavit of R. St. Clair, as follows: "I was in the town of Minden, in said county, and saw a man on the outside and south side of the court house in said county, and saw the said man enter the said court house through the open window thereof into the room where the said jury had been by the district court of said county sent and ordered to be kept during their said deliberation aforesaid in the cause aforesaid," and that this occurred on the morning of October 21, 1883, and while the jury were considering their verdict. But it is not shown that this occurred while the jury were in the room to which they had been sent, nor that they had not been removed to another place, nor that the person referred to was not the sheriff or bailiff, and making the entry for a lawful and proper purpose. The affidavit was not sufficient in itself to convince the mind that anything irregular or unusual was being done. The entry was made "on the morning of October 21st," was seen by the affiant, who was one of the counsel for plaintiff in error, and who could have ascertained who the intruder was, but he did not. But this matter is fully and satisfactorily settled by the affidavits of two of the jurors, who testify positively that "no one had access to the said jury or was allowed in the jury room except the members of the jury and the bailiff in charge." It is suggested by plaintiff in error that the man referred to was a juror who "went over to the saloon to 'see a man just for a moment,' and was returning to his duties duly refreshed," etc. This suggestion is not sustained by any proof.

It is insisted that a new trial should be granted, because the plaintiff in error was removed from the court room

during the trial, and while a witness was being examined by the district attorney. The affidavits show that during the trial, the prisoner requested the sheriff to allow him to retire for a proper and necessary purpose. The request was granted, the sheriff accompanying him. The district attorney asked two or three questions which were answered by the witness. The attention of the district attorney was then called to the fact that the prisoner had stepped out, upon which he ceased until his return, and then re-asked the questions (which were unimportant), and they were re-answered by the witness. No objection in any form being made by the prisoner or his counsel, nothing occurred which could be in the least to the prejudice of plaintiff in error.

It appears from the record, that the jury while deliberating were uncertain as to the testimony of the two principal witnesses for the defense, and they were brought into court, and the examination-in-chief of those witnesses was read by the reporter. This is now complained of. It is quite clear to our minds that this could not possibly have worked any prejudice to the plaintiff in error. But no objection was made at the time, and no exception was taken. So far as the record shows, it was done with the consent of plaintiff in error. The presumption is it was. *Fillion v. State*, 5 Neb., 354.

The plaintiff in error was convicted of the offense charged on a former trial, and which was set aside by this court, and is reported in 14 Neb., 503. On the former trial, one A. T. Shinneman was a witness on behalf of the state. This witness was the sheriff of Cowley county, in the state of Kansas, and arrested plaintiff in error at Winfield, in that state, and at the same time recovered from him the horses alleged to have been stolen. The arrest and recovery were made soon after the alleged theft. After the first trial, and prior to the second one, Shinneman died. The fact of his death was shown and his testi-

mony as given on the first trial was reproduced on the second. It is insisted that the reception of this evidence was in violation of the constitutional provision of this state which guarantees to a defendant the right " to meet the witnesses against him face to face." Section 11, art. I., Constitution of Nebraska. It is conceded that at common law the testimony was competent, but it is insisted that this rule of the common law is changed by this constitutional provision.

In Wharton's Criminal Evidence, section 227, it is said, " What a deceased witness testified to on a former procedure against the same defendant for the same offense as that under trial, or for an offense substantially the same, may be proved by witnesses who heard the testimony of the witness; nor is such oral evidence excluded by the fact that the original testimony was reduced to writing, nor in criminal cases by the constitutional provision that the defendant is entitled to be confronted with the witnesses against him." In this case the witness had testified to the facts sought to be proven, and had done so in the presence of the accused; had been cross-examined by him, and had met him " face to face" in giving his testimony, and that in the same cause as the one in which the proof of the former testimony was made. The evidence was competent and properly received. *Brown v. Commonwealth*, 73 Penn. St., 325. *Johnson v. State*, 1 Tex. Ap., 333. *State v. Johnson*, 12 Nev., 121. *People v. Murphy*, 45 Cal., 137, and cases cited in note to Wharton's Crim. Ev., *supra*.

Objection is also made to the manner of proving the testimony of this deceased witness. The record shows that the reporter of the court was placed upon the witness stand, and testified that he was the reporter of the district, and that he was present and reported the evidence on the previous trial. That the witness Shinneman testified on that trial, and his testimony was accurately re-

ported by him. He was then requested to read the testimony of the deceased witness, which he did by reading the questions and answers as they were given on the former trial, excepting a part which was objected to by plaintiff in error, and the objection being sustained the testimony was excluded. Plaintiff in error claims that a copy of the reporter's notes was introduced in evidence in the form of an exhibit as documentary evidence; and as such was incompetent. We do not so consider it. It is true the reporter was not asked to give the testimony from memory, for the reason, perhaps, that such a thing was known to be impossible. But the testimony was simply repeated, by the reporter using his notes as a guide to refresh his memory. The right to cross-examine the reporter at all stages of the testimony was preserved together with the right to object to any objectionable questions, which latter right was exercised, as shown by the record. The correct method of introducing such testimony would perhaps be to first ask the witness if he could state from memory the testimony of the deceased witness, and if the answer should be in the negative, the memory of the witness could be refreshed by the notes he had taken. Wharton's Crim. Ev., § 231. In the case at bar there was no substantial departure from this rule. In the *People v. Murphy, supra,* it is distinctly held that a person who kept notes of the testimony of a deceased witness may read such notes to the jury as the testimony of the deceased witness. It must also be observed that no objection was made in the court below to the manner of proving the testimony of Shinneman, but to the proof itself upon the constitutional ground above referred to. We see no error in the ruling of the district court upon the admissibility of the evidence.

The last contention of plaintiff in error is, that the verdict of the jury is not sustained by sufficient evidence. The testimony is quite voluminous, and cannot be reviewed at length here.

It is claimed by plaintiff in error that he purchased the horses alleged to have been stolen, and that his purchase was made on the 25th of May, 1882, at Chatman, Kansas, in good faith, etc. The proof upon this point is by the testimony of one witness who claims to have been present and witnessed the trade, and by the wife of plaintiff in error, who testified that he was out talking with a stranger, and came into the house saying they were nice horses, that he had bought them and wanted her to get the money, and she got it for him to pay for them.

On the part of the state it is testified by Matthew Hawkinson, the owner of the horses, that they were stolen on the night of the 16th of May in Kearney county, Nebraska, and by Mrs. Patterson, Henry Erickson, and Oscar Carlson that plaintiff in error was seen by them in the immediate neighborhood in which the horses were stolen but a short time before they were taken—from sixteen to forty-eight hours—that he was in company with another man, and that they claimed to be hunting employment at breaking horses. They called at the house of Mrs. Patterson and bought some bread, and while there their conduct and appearance was such as to specially attract her attention. None of this proof is contradicted, and no effort is made to show the whereabouts of plaintiff in error at that or at any other time previous to his arrest at Winfield, Kansas, in June following, where he was trying to sell the horses. The evidence that he was in the neighborhood from which the horses were taken is quite satisfactory, and being uncontradicted must be taken as true. The evidence that he bought the horses is quite unsatisfactory, and lacks those convincing qualities which are usually found in the statements of credible witnesses.

The testimony was sufficient to sustain the verdict, and the judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.