WINFIELD S. HADDIX V. STATE OF NEBRASKA.

FILED APRIL 18, 1906.   No. 14,445.

1. **Jury: TALESMEN.** When the trial court finds that the regular panel of jurors will be exhausted, and that it will be necessary to call talesmen for the trial of a cause pending, it is proper to order the sheriff to call a specified number of talesmen for that purpose in anticipation of such failure of the regular panel. The fact that the sheriff called as such talesmen, pursuant to the order of court, persons having the qualifications of jurors, who had been, before the order was made, requested by the sheriff to attend court for that purpose, is not sufficient ground for challenge, unless it appears that the sheriff is interested in the cause, or there is some evidence to show that the sheriff acted from an improper motive.

27

2. ———: CHALLENGE. Upon a trial for murder in the first degree, it is sufficient ground for challenge of a juror that he has such opinions as would preclude him from finding the accused guilty of an offense punishable with death.

3. Evidence: OBJECTIONS. Upon sustaining an objection to an offer of testimony, the court may allow part of the offered testimony without stating the reason for excluding the remainder.

4. Remarks by the Court in the presence of the jury, reflecting upon the evidence of an expert witness, will not be held prejudicial, if there is no evidence before the jury to render the expert evidence applicable to the issue being tried.

5. Accused as Witness: IMPEACHMENT. If the defendant testifies in his own behalf in a criminal case, he may be impeached as any other witness. If it is sought to show that he has made statements out of court inconsistent with his testimony, the statement supposed to have been made by the defendant, and to which his attention has been called while testifying, must be incorporated in the impeaching question, so that the question can be answered with yes or no by the impeaching witness.

6. Criminal Law: TRIAL. If it appears to the court that a juror, for any cause, has failed to hear the evidence given by a witness, the witness should be required to repeat his evidence or such part thereof as the juror has failed to hear. But, unless it clearly appears that the evidence or some part of it has not been heard by all the jurors, the court is not required, on its own motion, to cause the evidence to be repeated.

7. Homicide: INSTRUCTIONS. Upon the trial of an indictment charging murder in the first degree, the defendant may be convicted of a lesser degree of homicide, if the evidence warrants it. If the evidence is not sufficient to support a conviction of murder in the first degree, the jury should be so instructed. The court should submit to the jury those issues of fact upon which their finding, when made, would be allowed to stand as supported by the evidence. But, when the evidence is such as to make it proper to submit to the jury the question of the defendant's guilt of murder in the first degree, instructions submitting that question will not be erroneous because the jury found the defendant guilty in the second degree only.

8. ———: ———. When the defendant is found guilty of murder in the second degree only, prejudice will not be presumed because of several repetitions in the instructions of principles of law applicable to an issue of murder in the first degree, if the evidence was such as to justify the submission of both issues to the jury.

ERROR to the district court for Custer county: BRUNO
O. HOSTETLER, JUDGE. *Affirmed.*

*H. M. Sullivan, A. R. Humphrey* and *Aaron Wall,* for
plaintiff in error.

*Norris Brown, Attorney General,* and *W. T. Thompson,*
contra.

SEDGWICK, C. J.

This defendant was convicted of murder in the second
degree in the district court for Custer county, and has
brought the record of his conviction here for review upon
petition in error. The bill of exceptions is a large one, and
it shows that the evidence taken upon the trial in many
matters of detail was conflicting. No contention, however,
is made in the briefs that, if the issue was properly pre-
sented to the jury, the evidence is insufficient to support
the conviction. The fact that the defendant shot and
killed Melvin Butler, the deceased, was not contested upon
the trial. Justification for the act was urged upon the
theory of self defense. These two men were neighbors,
their farms upon which they lived were separated only by
the line between Custer and Sherman counties. There had
been, prior to the homicide, some controversy between
them, and evidently some bitterness of feeling toward each
other, arising from various causes, among which was a dis-
pute as to the right of the public to use a roadway which
crossed the defendant's land. We would infer from the
evidence that both men were in good standing in the com-
munity in which they lived; intelligent, vigorous men,
jealous of their personal rights, and not much troubled
with personal cowardice. Their contention and strife with
each other, arising apparently from insufficient causes,
and not justifiable on the part of either, have led to the
death of one, and the conviction of the other for murder.
It is seldom that this court is called upon to review the

record of a homicide that presents more features of human interest than this. These men were not in the highest walks of life, but they seem to have been useful members of society; and each had a wife and family of young children who appear to have needed and enjoyed his care and protection. The trial court was evidently impressed with the importance of the case with which it had to deal, and manifested more than usual care to guard the interest of the state, and to thoroughly and impartially investigate the facts bearing upon the question of the defendant's guilt; and at the same time to protect the defendant in all of his rights, and safeguard him against an unjust conviction. After such a trial, the jury has found the defendant guilty. The homicide occurred in a personal conflict between the defendant and the deceased. It appears beyond any reasonable doubt that the defendant, armed with a shotgun, went to the place where the disputed road crossed his land, where he knew that the deceased with his young daughter and two other persons would probably attempt to pass. Whether the defendant then had it in his mind to punish the deceased for an affront which he supposed the deceased had recently given to the defendant's family was a disputed matter. It does not seem probable from all the circumstances of the case that such was his intention. It would seem more probable that he intended to prevent the deceased from crossing by the disputed road.

It was contended upon the trial that the defendant's purpose in going where he did was to look after and protect his young children, whom he expected to be returning home at that time. There is no doubt that the deceased's children were away from home, and that they might return by the way the defendant went, and it seems probable that the defendant may have supposed that he might meet them; but, however that may be, there is no doubt that the evidence justified the jury in finding that the defendant expected and intended to meet the deceased and to prevent his passing over the road in dispute. The deceased was armed with a pistol, as was also the young

man who accompanied him, and as soon as they arrived at the line of the defendant's land, the deceased and the defendant began shooting at each other. It would be difficult to determine from the evidence with certainty which party began the shooting, but the evidence shows, and the defendant admits, that he purposely shot the deceased, intending to kill him. This the defendant says it was necessary to do, and was done by him to save his own life. Under these conditions, and in the light of antecedent and surrounding circumstances, it was the peculiar province of the jury to determine the motives of the defendant, and to ascertain whether his action was prompted by anger and a desire for vengeance, or by the instinct of self-preservation, made necessary by conditions for which he was not responsible. This great and important duty seems to have been conscientiously performed by the jury. Defendant's counsel necessarily assumed that this verdict must not be disturbed, unless the defendant's rights have been neglected, or unwarranted burdens put upon him in the trial in some of the particulars of which they complain. The questions presented in the brief can be best considered in the light of the conditions to which attention has been called.

1. In the brief of the state, which was filed but a few days before the hearing, it was pointed out that the bill of exceptions was not properly identified. The attention of the court was called to the matter upon the argument by the defendant's attorneys, and leave was requested to withdraw the bill of exceptions for further identification. This being a prosecution for a felony, and the request to withdraw the bill of exceptions for further certification having been made at the first opportunity after attention was called to the defect by the brief of the state, leave was granted and the certification has been corrected acordingly.

2. It appears that, for causes not shown in the record, jurors had been excused so that but two remained of the regular panel. Several days before the session in which the defendant was tried, the sheriff notified sixty qualified

residents of the county to appear at the ensuing session of
the court to act as jurors. Afterwards, and before this
case was called for trial, the court caused an order to be
entered upon the record directing the sheriff to call sixty
qualified jurors as talesmen for the trial of this case. When
the case was called for trial, and the two jurors of the
regular panel had been called, the court directed the
sheriff to call other jurors, and he filled the panel from per-
sons present in the courtroom, who had appeared there in
pursuance of his former notice to them to so appear. These
jurors were objected to by the defendant on the ground that
they had not been properly summoned. The contention is
that, when the sheriff directed these men to appear in court,
no order had been made authorizing him so to do, and that
his action was wholly unwarranted, and the same men hav-
ing been called by him as jurors, the result was that the
sheriff as a private individual, without authority from the
court, selected the jurors to sit in the trial of this case.

It was held in *Pflueger v. State,* 46 Neb. 493, that the
trial court may order the calling of talesmen before the
regular panel is exhausted, when it appears that the reg-
ular panel will be exhausted, and that such talesmen will
be necessary; but there is no provision in our law for the
calling of such talesman by the sheriff without authority
from the court. His action, therefore, in notifying these
men to appear in court before any order had been made
directing him so to do was extra official, and would have
no force or effect in qualifying these men to act as jurors.
When, however, he was directed by the court to call tales-
men, it was his duty to exercise his discretion in selecting
qualified electors of the county. His action in calling these
talesmen from the number of those men who were already
in the courtroom, pursuant to his unauthorized notifica-
tion, would not disqualify them as jurors, unless irregu-
larity in first notifying them to appear, without authority
for so doing, should be held to raise the presumption that
the defendant was, or might have been, prejudiced thereby.
In as early a case as *Burley v. State,* 1 Neb. 385, it was held

that jurors must be selected in the manner prescribed by law, and, in case they were not so selected, it was "not material whether any injustice was thereby suffered by the prisoner," and it has frequently since been held that, if any rule of the law is violated in the selection of a jury, prejudice to the defendant will be presumed. In this case, however, it does not appear that any provision of the statute was violated. It was not the duty of the sheriff to call individuals as jurors before he had been ordered so to do by the court; and it may be that slight circumstances tending to show that the sheriff was interested or partial in the case, or that the defendant was in any manner prejudiced by this action of the sheriff, might require the court to exclude jurors so chosen. But we find no such circumstances in this record. There is nothing to indicate that the sheriff had any personal interest whatever in the prosecution, or that the defendant suffered, or could have suffered, any prejudice from the sheriff's action in the matter. We think, therefore, that the court did right in refusing to interfere with the discretion of the sheriff in calling talesmen in compliance with its order.

3. It appeared upon the *voir dire* examination that some of the jurors called had conscientious scruples against the infliction of. the death penalty, and for this reason they were excused by the court. It has frequently been held that the trial court must exercise its discretion in such matters, and that if it appears from the examination of the jurors that it is probable that a juror may, under the influence of his conscientious scruples, unduly hesitate in determining the facts which might lead to the infliction of the death penalty, disapproved by the conscience of the juror, such juror should be excused. *Bradshaw v. State,* 17 Neb. 147; *Hill v. State,* 42 Neb. 503; *Dinsmore v. State,* 61 Neb. 418; *Rhea v. State,* 63 Neb. 461. The language of the statute is: "In indictments for an offense the punishment whereof is capital, that his opinions are such as to preclude him from finding the accused guilty of an offense punishable with death" shall be good cause for challenge. Cr. code,

sec. 468. It is manifest that it was not intended by the legislature that jurors, otherwise qualified, should be excluded from this service because of sentimental feelings against the infliction of such punishment, nor because, even, of fixed opinions that such penalties are not justifiable upon moral grounds, unless it appears that the juror is so prejudiced against such penalties as to "preclude him from finding the accused guilty," and it may be that this statute has in some cases been too liberally applied. The question, however, presented in this record is whether, under any circumstances, any conviction or prejudice of the juror, however strong, even if it would preclude the infliction of the death penalty, should be ground for challenge. It is conceded in the argument that, when the statute provided no other punishment for murder in the first degree than the death penalty, the exclusion of a juror under such circumstances was required. The contention is that, since the change in the statute leaving it to the discretion of the jury whether the death penalty should be inflicted in each particular case, the statute allowing this ground of challenge has no application. This contention is predicated upon the theory that the discretion of the jury in this regard is an absolute discretion and that in all cases the juror may, without other reason than his personal feelings in the matter, reject the death penalty and inflict imprisonment only as the punishment for murder. This does not seem to be the theory of the law. No doubt the tendency of modern legislation is toward less severe penalties; and many thoughtful and earnest minds are impressed with the belief that the taking of human life is in no case justifiable; but this idea has not been embodied in the laws of this state. The theory of our law is that there are instances in which the infliction of the death penalty is not only justifiable, but demanded. The change in the statute which requires the jury to exercise its discretion in the matter implies that in some instances life imprisonment is an adequate penalty even for murder in the first degree. The discretion of the jury, therefore, will be controlled by the circumstances of

the particular case, and not by the whim of the individual juror. A juror, then, who has such opinions as to preclude him from inflicting the death penalty in any case, necessarily is of opinion that our law is wrong, and is not, therefore, qualified to administer it. The amendment of the statute in question was made in 1893, and since that time *Hill v. State, supra,* was decided, and in that case it was declared that "the provision of the criminal code making conscientious scruples of a juror against capital punishment ground of challenge for cause in prosecutions for murder was not repealed by the amendment of 1893, conferring upon the jury discretion to fix the punishment, upon conviction for murder in the first degree, at imprisonment for life instead of the death penalty." The later cases follow the same rule.

4. A young son of the defendant was called as a witness in his behalf, and testified that sometime in the month before the homicide, as he was going home from a ball game, and was not far from the farm of the deceased, he was frightened by the deceased. The substance of the conduct of the deceased on that occasion was told by the witness in this language: "He just called at me three times and whistled, he called the first time and I stopped, and then I started to run, and he called twice and whistled at me." The witness then ran home and was not further interfered with. Upon the redirect examination, the witness was asked why he was afraid of him. This was objected to as calling for a conclusion of the witness, and the objection was sustained. The defendant then made an offer of proof by the witness, the substance of which was that the witness believed at the time that the deceased desired to punish him for taking down a fence of the deceased and not replacing it. The ruling of the court upon the offer was to the effect that the defendant might show the facts in regard to taking down the fence by the witness and replacing it by the deceased; but the court refused to allow the witness to testify that it was for this reason that he was afraid that the deceased intended to injure him. There was, of

course, no error in this ruling of the court, and the defendant's exceptions thereto were properly overruled. It is, however, insisted that, although it should be thought that the exclusion of the evidence as offered was not erroneous, still the language used by the court was prejudicial to the defendant as containing an intimation "that the witness had been guilty of reprehensible conduct toward the deceased." The language said to have been used by the court was: "The offer is denied, except to this extent that the witness may be permitted to testify, if counsel desire him to, that he had passed along near there the day before and had kicked down the fence which Butler had put up." The acts of the witness recited by the court were recited in the defendant's offer of proof, and the objection made is that the court failed to call attention to the mitigating circumstances that would justify the witness in taking down the fence of the deceased. But these matters were not competent in evidence, and it would seem to have been improper for the court to have recited them.

5. Two of the state's witnesses testified to having heard the defendant shout to the deceased and the parties with him in threatening language on the evening of, and shortly before, the homicide. These witnesses were at the time at their home, which was possibly half a mile or more from the residence of the defendant, near which he is alleged to have been at the time. On the theory that there was an elevation of ground between the witnesses and the defendant that might intercept the sound of the defendant's voice, the defendant offered a witness as an expert who testified, in substance, that such obstruction would interfere with the passing of sound from one place to another, and would, in the opinion of the witness, render it impossible for the sound of the defendant's voice to have been heard as testified to by the state's witnesses. The defendant alleges that, while this expert was testifying, the court, in passing upon a question raised upon the evidence, used these words in the hearing of the jury: "A country boy on a hill can tell more about how sound travels, or how far

you can hear a voice, than the philosophers who have written books on the subject." It is manifest that such language from the court would be improper and might, if the evidence offered was material to the issue, be prejudicial to the defendant. It is denied that the court used such language. If such language had been used by the court, it would, of course, be of no importance in the case, except as reflecting upon the weight to be given the evidence offered by the expert witness; and in this case it could not have been prejudicial because, as far as we can see, the evidence of the expert has no relevancy to the question being tried. We have been unable to find, and our attention has not been called to, any clear and substantial evidence from which the jury could have found that there was any elevation of land between the defendant and the witnesses that could have obstructed or deflected the sound of the defendant's voice. It is shown that the defendant's house was situated upon low land; that between his residence and the home of the witnesses the surface of the earth is very uneven; that a deep canyon or draw extends through the territory, and that there are elevations of ground that some might call hills and others would not, but to what extent the ground is elevated is not shown. It appears uncontradicted in the evidence that the home of the witnesses is situated on an elevated plateau; that this elevation is greater than that of any of the ground between the two residences; how much greater is not shown, but one witness testified that there was no elevation of ground between them that would prevent the witnesses hearing sound that came from the vicinity of defendant's residence. The expert witness in question had no knowledge of the physical features of the territory between the two residences. A finding that there was an elevation that would interfere with a direct line from one of these residences to to the other would be based upon guesswork, and not upon the evidence in this record. The evidence of the expert, therefore, had no bearing upon the issue and might have been wholly excluded. It follows that the defendant could

not have been prejudiced by the supposed remarks of the trial court.

6. Testimony was offered for the purpose of impeaching the evidence of the defendant who was sworn as a witness in his own behalf. The defendant had testified to the circumstances surrounding the homicide and, among other things, had stated that the controversy did not arise from the dispute as to the alleged road over the defendant's land, but that, on the other hand, he had started out from his home to look after his children, and accidentally came in contact with deceased. A witness was called who had been with the defendant soon after the homicide, and had conversation with him, and, after showing these facts, this witness was asked this question: "Did the defendant tell you on the car that night, coming from Mason City, words like these: 'That he had some trouble with this man over a road; that he went down to the gate with a gun, and that he killed him; that he went to open the gate to go through, and that he killed him; that Butler went to open the gate?'" This question was clearly objectionable, for several reasons. The exact words which it was claimed that the defendant had used should have been incorporated in the question propounded to the witness, and the question, having been put to the witness so indefinitely as it was, naturally called for the indefinite and wholly improper answer of the witness: "Well, that is about the substance of it." Past experience in the trial of such questions has led to the conclusion, which has long ago become an unvarying rule, that such mode of impeachment, being dangerous and liable to lead to prejudice, should not be allowed, except with the strict observance of the technical rules with which the law has protected a witness whose testimony it is sought in this manner to impeach. When, however, it is sought to enforce these technical rules against the party offering the evidence, it is necessary likewise to lay the same restrictions upon the objector. The objection made to this question was: "Defendant objects for the reason that the question suggests a confession or

admission, and that the same is a part of the state's main case, and is not proper rebuttal testimony; that no foundation was laid for the introduction of the testimony when the defendant was on the stand." It will be noticed that no objection was made to the form of the question. The defendant having consented to the use of so indefinite a question, it cannot be said that he was prejudiced by an answer, the indefiniteness and indirectness of which was suggested by, and the natural result of, the question itself. There was, therefore, no error in refusing to strike out the answer of the witness on the ground that it was not responsive, and incompetent, irrevelant and immaterial. The evidence, if offered as a part of the state's case, would, of course, have been competent as an admission of the defendant against his interest; but, in the condition of the evidence at the time, it would have been manifestly unjust to the defendant to have admitted the evidence as affirmative proof of the defendant's guilt, and, so far as it might have been thought to have been offered for that purpose, the objection sufficiently raises the question and should have been sustained.

7. While the testimony was being taken in the case, defendant's counsel suggested to the court that one of the jurors was asleep. The court, thereupon, sent the sheriff to awaken the juror. The juror appeared at the time to have his eyes closed and head bowed, but, as the sheriff reached the juror, and before he had been interfered with by the sheriff in any way, he resumed his attentive position, and no further action was taken by the court thereon. The defendant now insists that, although he did not request the court so to do, the court should of its own motion have questioned the juror, and, if it appeared that the juror had failed to hear any part of the evidence that had been given, the court should have caused the evidence to have been reintroduced; but this contention cannot be sustained. The proof offered by the defendant upon this matter is somewhat contradicted, but, even if we take it as true, it does not sufficiently appear that the

juror failed to hear the evidence given by the witness, and, if he did, the defendant could not by his silence acquiesce in the continuance of the trial without further action on the part of the court, and afterwards urge that he was prejudiced by the want of such action. It follows that this assignment in the motion for new trial was properly overruled.

8. It is earnestly contended that the court erred in those instructions in which the elements of murder in the first degree were explained to the jury. There were four of these instructions, and possibly a part of some of them might properly have been omitted. It is not contended that they contained any erroneous statement as to the law, nor is it denied that the evidence was in such condition as to make it proper to submit that question to the jury. The argument seems to be that, since the jury have found the defendant guilty of murder in the second degree, thereby excluding the conclusion of his guilt of the higher degree, it follows that the instructions defining murder in the first degree were unnecessary, or at least that some of them, or some part of them, might have been dispensed with. Of course, there is no merit in such a contention, and possibly it was not intended to insist upon this suggestion. The principal contention appears to be that there was "practically a reiteration and repetition of the first instruction given upon that point." The instructions as a whole present an unusually clear explanation of the principles of law underlying the questions of fact to be submitted to the jury, and we cannot find any such repetition in the statement of these principles as could be said to prejudice the defendant.

It appears that the whole matter was fairly submitted to the jury, and without any prejudicial error that would require a reversal of the judgment.

AFFIRMED.