ARTHUR J. KOENIGSTEIN v. STATE OF NEBRASKA.

FILED JUNE 23, 1919. No. 20606.

1. **Criminal Law:** EVIDENCE: ADMISSIBILITY. When a witness has been previously examined in open court with the opportunity for cross-examination, which has been fully availed of, and the witness cannot be procured for examination at the second trial, the

evidence so given upon a former trial for the same offense may be used on the second trial.

2. ———: ———: ———. In such case, it must affirmatively appear that the personal attendance of the witness at the trial cannot be had.

3. ———: ———: ———: Discretion of Court. This question is in the sound discretion of the trial court, and that discretion will not be interfered with upon appeal unless an abuse of discretion is affirmatively shown.

4. ———: Reasonable Doubt: Instruction. In a criminal trial, it is error to instruct the jury to take into consideration "all the circumstances established beyond a reasonable doubt by the evidence, bearing on the respective questions and facts testified to by the witnesses."

5. ———: ———: Proof. The ultimate facts necessary to a conviction must be established beyond a reasonable doubt, but it is not necessary that the minor circumstances relied on by the state to establish such ultimate facts should be proved with the same degree of certainty.

6. ———: Evidence: Repetition. If a witness in rebuttal is erroneously allowed to repeat the evidence given by him in his direct examination, such error will not require a reversal unless it affirmatively appears that the defendant may have been prejudiced thereby.

7. ———: Exclusion of Evidence. It is not reversible error to refuse to allow proof of matters that are conceded by all parties.

8. ———: Motion to Acquit. A motion to direct an acquittal should not be sustained if the evidence is such that reasonable minds might differ as to the guilt of the defendant under the evidence and instructions of the court.

Error to the district court for Madison county: Anson A. Welch, Judge. *Affirmed.*

*Reese & Stout* and *Jack Koenigstein,* for plaintiff in error.

*Willis E. Reed, Attorney General, Charles S. Roe* and *M. D. Tyler, contra.*

Sedgwick, J.

The defendant was convicted of accepting a bribe from Nannie Meyers, who was keeper of a house of prostitution at Norfolk, while he was county attorney, in con-

sideration of protecting her from prosecution for violation of the law. A former conviction upon the same information was reversed by this court. 101 Neb. 229. In that opinion the nature of the evidence in support of the charge is fully stated, and the evidence on this second trial is similar in character. The witness Nannie Meyers was not present in court at the trial, and her evidence given upon the former trial was by the court allowed to be read in evidence over the objection of the defendant.

The first question now presented, and the one principally relied upon in the brief of defendant, is as to the competency of this evidence. The constitutional provision that "the accused shall have the right * * * to meet the witnesses against him face to face " (Const., art. I, sec. 11) guarantees a very important right for the protection of the defendant. When a witness has been previously examined in open court, with the opportunity for cross-examination, which has been fully availed of, and the witness cannot be procured for examination at the second trial, the evidence so given upon a former trial for the same offense is universally held to be competent, and may be necessary to prevent a failure of justice. *Hair v. State,* 16 Neb. 601. The important question in such a case is whether it sufficiently appears that the personal attendance of the witness at the trial cannot be had. If it appears that the personal attendance of the witness might have been obtained by diligence on the part of the prosecution, the reading of the former evidence will not be allowed, and if it appears probable that the witness may be found and his examination be had in open court within a reasonable time, the trial will ordinarily be delayed for that purpose. In this case the trial had been adjourned from a former term of court and an order had been entered that the witnesses for the state should give an undertaking for their appearance at the trial. Pursuant to this order, the witness in question had deposited money in the

amount of the required recognizance as fixed by the court in lieu of bond. When she failed to appear, a formal forfeiture of her recognizance was entered and the money paid into court. The case had been set down for trial on Monday, the 18th of February, 1918, and on Friday, the 15th, a subpœna was issued for this witness and placed in the hands of the sheriff for service. This subpœna was returned by the sheriff, and on the return it was said that after diligent search the witness could not be found. On Monday, the 18th, a capias was issued for this witness, and again returned by the sheriff that he was unable to find the witness. The sheriff was also examined as a witness, and testified that he went to the residence of the witness, and found no one there and the doors were locked, and that he had made inquiries in regard to the whereabouts of the witness, and was unable to find her. There was also evidence that the witness had recently been known to be in places outside of the state of Nebraska. It is strenuously insisted that under these circumstances it was an abuse of discretion on the part of the trial court to permit the reading of the former testimony. It appears that there are different statutes in the various states in regard to reading former testimony of an absent witness.

"If the witness has disappeared from observation, he is in effect unavailable for the purpose of compelling his attendance. Such a disappearance is shown by the party's inability to find him after diligent search. The only objection to recognizing this ground of unavailability is the possibility of collusion between party and witness; but, supposing the court to be satisfied that there has been no collusion and that the search has been *bona fide,* this objection loses all its force. For former testimony this cause of unavailibility has long been recognized." 2 Wigmore, Evidence, sec. 1405.

In 17 C. J. pp. 240-242, it is said: "The discretion of the court is very broad in determining questions relating to the reception of evidence and is reviewable only for

abuse. The broadest application of this principle covers the rulings of the trial court on the relevancy of evidence, especially with respect to its remoteness. Similarly, the trial court's rulings on the admissibility of circumstantial evidence are treated with great respect, and the general rule applies with peculiar force to the reception or rejection of testimony given at prior proceedings. * * * Similarly, it is peculiarly the province of the trial, as distinguished from the appellate, court to pass on the preliminary proofs essential to the admission of certain kinds of evidence, such as evidence received in prior proceedings, dying declarations, and secondary evidence generally.''

This presents two very important questions: (1) Have the officer and prosecuting attorney acted in good faith in attempting to find this witness and procuring her at the trial; (2) Is there any ground to suppose that the defendant connived at her absence? The text-writers agree that the matter of allowing the former evidence to be read is in the discretion of the trial court. From the two foregoing propositions that are very prominent in this case, the necessity of leaving the matter to the discretion of the trial court is very apparent. The trial judge, knowing the witnesses, knowing what evidence has been offered, and knowing the conditions and appearance of the parties and the facts surrounding the trial so far as it has gone, can form an opinion as to whether the prosecuting attorney and officer have acted in good faith and are unable to find the witness, and so her presence is not available. And, if the trial judge sees the conduct of the defendant and his counsel, and knows all the conditions surrounding the case, he can estimate whether there is a probability that the defendant at least consented to her being absent. We suppose, therefore, all will agree that we ought not to reverse the action of the trial judge upon such questions as this, unless the facts proved make it clearly appear that he has abused his discretion. We cannot find that

there was such an abuse of discretion as to require a reversal. The evidence was very important. If it was rejected, there was probability of a failure of justice. On the other hand, the right to have the witness present in court with opportunity to cross-examine, and to impeach her evidence if necessary—a right given the defendant by our fundamental law—cannot be lightly disregarded. This witness had been going from place to place within and without the state for some time before the trial, and yet no attempt was made to have subpœna served. Was the state attempting to prevent further cross-examination and so avoid the risk of impeaching evidence which might have been different after the former trial, or was the defendant in collusion with the witness for the very purpose of avoiding her evidence? The trial court had named the proper amount of an undertaking necessary to procure the attendance of this witness at the trial, and she had deposited that amount as a guaranty that she would be present. A few days before the time set for trial, the prosecuting attorney had called this witness at the telephone and she had assured him that she would be present. When she failed to appear, a writ was issued, and the sheriff reported that she could not be found. Her deposit was forfeited and her evidence at the former trial read to the jury on the trial. Such conditions clearly make a case for the exercise of the discretion of the trial court.

The court instructed the jury: "In determining whether or not the defendant is guilty of the crimes charged in any count of the indictment, you will take into consideration all the evidence bearing thereon which has not by the court during the progress of the trial been stricken, and all the circumstances established beyond a reasonable doubt by the evidence, bearing on the respective questions and facts testified to by the witnesses." The instruction is without doubt erroneous.

"While each and every ultimate and essential fact necessary to a conviction in a criminal case must be

established beyond a · reasonable doubt, where a conviction depends entirely on different circumstances, arranged linkwise, connecting the defendant with the crime charged, yet it is not necessary that the minor circumstances relied on by the state to establish such ultimate and essential facts should be proved with the same degree of certainty, as some of these may fail of proof, and yet those essential to conviction be found from other evidence beyond a reasonable doubt." *State v. Cohen,* 75 Am. St. Rep. 213 (108 Ia. 208). In the opinion it is said: "It is not necessary that each essential fact in the chain of circumstances solely relied on to connect the accused with the commission of the offense, when separately considered, be found beyond reasonable doubt. Such a fact, though having little to sustain it when standing alone, may derive such support from others immediately connected therewith as to exclude all doubt of its existence."

The conviction in this case did not in any sense depend "entirely on different circumstances, arranged linkwise, connecting the defendant with the crime charged." There were "minor circumstances relied on by the state to establish the ultimate and essential facts." Many cases are cited in the opinion above referred to, and in the note in the American State Reports, illustrating the proper application of the rule that the guilt of the defendant in a criminal prosecution must be established beyond reasonable doubt. The error in this instruction was principally prejudicial to the prosecution. There were many circumstances in the evidence, no one of which taken by itself was established beyond reasonable doubt, and yet, considered together the effect of each circumstance upon the evidence relating to other circumstances in the case is not to be disregarded. When we consider the character of the evidence offered by the defendant and the instructions of the court as a whole bearing upon the presumptions of innocence and the burden of proof, it does not so clearly appear that the

defendant might have been prejudiced by the instruction as to require a reversal on that account.

An attempt was made by the defense to impeach one of the witnesses for the prosecution. The foundation for this impeachment appears to have been laid in the cross-examination of the witness, who denied that he had made the statements attributed to him. After the defendant had introduced evidence tending to show that such statements had been made by the witness, the prosecution was allowed to recall the witness in rebuttal, and it is contended that, as the witness simply reiterated his denial, the court erred in allowing him to be recalled in rebuttal over the objection of the defendant. If this contention was well founded, it would follow that the rebutting testimony was unnecessary, and in that sense immaterial; but in what manner it prejudiced the defendant is not pointed out in the briefs.

It is complained that the court refused to allow the defendant to prove that, while he was necessarily absent from the state, ''he arranged with his brother, Mr. Jack Koeningstein, a member of the bar, to look after the legal business of Madison county.'' It is admitted that, while the defendant was absent, his brother did attend to his business, including his duties as county attorney. Whether he was regularly appointed by the defendant and the county commissioners to do so would not seem to be material.

The court properly refused the defendant's motion for a directed verdict, and, as we have found no prejudicial error requiring a reversal, the judgment of the district court is

AFFIRMED.