SIDNEY A. TROBOUGH v. STATE OF NEBRASKA.

FILED NOVEMBER 10, 1931. No. 27975.

*F. L. Carrico,* for plaintiff in error.

*C. A. Sorensen, Attorney General,* and *Homer L. Kyle, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

PER CURIAM.

Sidney A. Trobough was informed against in Adams county and there charged with having committed murder in the first degree, in that on November 23, 1928, he purposely and of his deliberate and premeditated malice shot his wife with a revolver, as a result whereof she died the same day.

This is the third appearance of this case here. At the first trial the defendant was sentenced to serve 18 years in the penitentiary, and at the second trial he was sentenced to 25 years of servitude. On appeal, both sentences were reversed. *Trobough v. State,* 119 Neb. 128; *Trobough v. State,* 120 Neb. 453.

In the present trial a change of venue was granted and thereupon the action was removed to Webster county. Upon submission there the jury found the defendant guilty of manslaughter and he was thereupon sentenced to serve a term of 10 years in the penitentiary. From the judgment so rendered the defendant has brought the record here for review.

The following facts appear to be fairly established: The defendant and his wife had been married almost two years when the tragedy occurred. The defendant was 17 years of age and his wife was 19 when they were married. They had one child and at the time of the trial he was about 16 or perhaps 18 months of age.

On the night of November 23, Vern Tooley, a married man who roomed at the Trobough home, and Lulu Claus, who also at one time roomed there, and two other guests were at the defendant's home for the evening meal. During the meal the defendant left the table and, upon his return a few minutes thereafter, he ruffled his wife's hair. Thereupon Lulu Claus made a reproving remark in respect of

this action, to which the defendant replied, "Keep still or I will slap you." Thereupon Tooley and the defendant both started for the door, the defendant having first taken his revolver down from the wall near the kitchen door. They were induced to return to the table, however. During the course of the evening it appears from the record that the defendant "playfully" discharged his revolver into the floor to "scare" certain of the persons that were present. When the Claus girl left the Trobough home later in the evening, the defendant told her she need not return to his home. Tooley accompanied her to a taxicab and he then went into the room which he occupied at the Trobough home. Thereupon it appears that the defendant's wife remarked, with reference to Miss Claus' departure, that she, Mrs. Trobough, "didn't see why she couldn't have her friends out there," when the defendant had his friends there. The defendant testified that he then went into the kitchen, and that, just as he reentered the dining-room where his wife was seated in a chair, he heard a shot. According to his evidence, his wife then suddenly arose to her feet and he caught her in his arms, but he was too weak to hold her and he laid her down on the floor. It appears that Tooley entered the dining-room almost immediately after the shot was fired, and very shortly thereafter a physician was called. The defendant meanwhile saw the gun on the floor near his wife, and he testified that he "grabbed it off of the floor and broke it and threw the shells down the register."

Tooley testified that, after he retired to the bedroom which he occupied at the Trobough home, and while he was sitting on the edge of the bed, he heard a shot, and Mrs. Trobough cried out and said: "Vern, he shot me." Tooley also stated that he subsequently inquired of the defendant if he knew the consequence of his act, and the defendant replied: "My God! no." According to Tooley's evidence it also appears that the defendant and he had been engaged in bootlegging. And shortly before the sheriff arrived, Tooley, the defendant, and the defendant's brother-in-law hid a collection of jugs and bottles.

Dr. Green, the physician who was called by the defendant, testified that Mrs. Trobough was dead when he arrived. He testified that the left common carotid artery had been punctured, thereby causing a hemorrhage from which Mrs. Trobough died.

It appears that Dr. Green, after ascertaining that Mrs. Trobough was dead, probed the wound to locate the bullet. The defendant contends that, had his wife been alive when the physician arrived, the probing, and not the bullet, caused the hemorrhage. But we think the evidence conclusively discloses that the bullet was the direct cause of Mrs. Trobough's death.

Dr. Green was a witness in both of the former trials of the defendant and his testimony at the second trial was read into the record of the present trial. The defendant contends that this constituted reversible error, and that the court therefore erred in overruling his motion for a continuance to the end that he might procure Dr. Green's presence as a witness at the present trial. The court, however, granted leave to the defendant to obtain a deposition of the physician, but the defendant did not avail himself of the offer. However, the evidence of two other physicians appears in the record before us and, in view of this fact and of the fact that the defendant did not avail himself of the opportunity granted by the court to obtain Dr. Green's deposition, we do not think the defendant was prejudiced in respect of the court's ruling. Nor do we find that the court abused its discretion in overruling the defendant's motion for a continuance.

Objection is also made to the fact that the court permitted the testimony of Lulu Claus at a former trial to be read into the record at the present trial. But it appears that this witness could not be found and, in view of this fact, we do not think the court erred in the premises. It is elementary that the evidence of a witness at a former trial may be read at a later trial, where such witness cannot be located to testify at a subsequent trial of the same case. *Koenigstein v. State,* 103 Neb. 580; *Meyers v. State,* 112 Neb. 149.

Nor do we find reversible error in the admission of the evidence of certain other witnesses of which complaint is made. And after an examination of the various instructions complained of, we do not find that the defendant was prejudiced by those given nor by those refused by the learned trial judge.

The record in the present trial is voluminous and considerable variance appears in the testimony of the defendant and Tooley, as well as some other witnesses. But from the defendant's own evidence it appears that he carelessly shot into the floor of his home in the early part of the evening of the tragedy; that there was liquor in his home; and that, just before he went into the kitchen, before his wife was shot, the gun in question was hanging on the dining-room wall which was immediately adjacent to and near the kitchen door. And Tooley, at that time, was in his bedroom preparing to retire.

Three juries have heard the evidence and each jury found the defendant guilty. And, besides, the defendant was granted a change of venue from Adams county, the county of his residence, to Webster county in the present case. The jury, as triers of fact, having heard the evidence and having observed the demeanor of the witnesses while they were testifying, found that the defendant was guilty. Under the circumstances and under the record before us, we decline to reverse the finding so made by the jury.

The judgment must be and it hereby is

AFFIRMED.