ROSS JACKSON V. STATE OF NEBRASKA.

277 N. W. 92

FILED JANUARY 7, 1938. No. 30091.

*W. I. Tillinghast, Beeler, Crosby & Baskins* and *Robert B. Crosby,* for plaintiff in error.

*Richard C. Hunter, Attorney General,* and *Francis V. Robinson, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ., and CHAPPELL, District Judge.

CHAPPELL, District Judge.

The plaintiff in error, hereafter called defendant, was informed against in the district court for Keith county, Nebraska, for the crime of murder in the first degree in the fatal shooting of one Charles Beekin on July 2, 1936. Upon trial to a jury he was convicted of manslaughter and sentenced by the trial court to the Nebraska state penitentiary for nine years at hard labor. He prosecutes error to this court.

Defendant claims many errors in the trial of the case, but actually relies upon four, to wit: The appointment of Murl Maupin as special prosecutor to assist the county attorney and his purported misconduct in final summation to the jury; the admission of the testimony of a witness, Alice Du Charme, given under oath at the preliminary hearing in the county court, when she was not present at the trial of the case; insufficiency of the evidence to sustain the verdict; and that the sentence of the trial court is excessive.

Immediately preceding the trial, Murl Maupin of North Platte, Nebraska, was appointed by the court as special prosecutor to assist the county attorney in the trial of defendant. Defendant's counsel objected in open court in the absence of the jury panel to his appointment. Thereupon, Mr. Maupin was promptly sworn and interrogated by the court, the county attorney and attorney for defendant. This evidence discloses that at some time prior to the day of the fatality defendant and his wife had consulted him briefly and informally relative to the custody of a child or children then living with their mother, Alice Du Charme, and the deceased. He was never employed, retained or further consulted in that matter or any other for them or their family or friends, and never had received any compensation from them or any of them. He was not related to any of the parties; had no interest in the case or the

result thereof; and had no interested client. On the morning of the shooting he rode with the sheriff and the county attorney to the scene of the shooting at LeMoyne, Nebraska, but never made any further investigation of the facts until called into the case by the county attorney a short time before the trial.

The guiding legal rule governing appointment of special assistants to aid the county attorney in the prosecution of criminal cases under section 26-904, Comp. St. 1929, is enunciated in *Barr v. State*, 114 Neb. 853, 211 N. W. 188: "Whether, in the prosecution for a felony, the court should, on the application of the county attorney, appoint counsel to assist in the prosecution, presents a question addressed to the sound discretion of the court." Error cannot be predicated thereon in the absence of a showing that the appointment operated to prejudice rights of the defendant. See, also, *Dobry v. State*, 130 Neb. 51, 263 N. W. 681; *Baker v. State*, 112 Neb. 654, 200 N. W. 876; *Gragg v. State*, 112 Neb. 732, 201 N. W. 338. We find nothing in the record showing that Maupin's appointment operated to prejudice the rights of this defendant.

During argument to the jury the assistant prosecutor said "that the jury should go out into the jury room and consider the evidence fairly and extend mercy in that manner, and should extend more mercy to the defendant than Ross Jackson showed to Charley Beekin." Defendant's counsel took exception to this remark and asked that the court "instruct the jury and to warn the attorney against such language and use in such matters." Whereupon the court said in part: "I wish counsel for the prosecution would be careful and stay within the record." In *Cooper v. State*, 120 Neb. 598, 234 N. W. 406, this court said: "It is the duty of the prosecuting attorney to conduct the trial in such a manner as will be fair and impartial to the rights of the accused, no matter how guilty, in his opinion, defendant may be; and this rule applies to special counsel assisting the prosecuting attorney." We still earnestly adhere to its admonition but cannot conclude that it has ap-

plication to this case requiring a reversal. Remarks of the prosecutor in final summation of the evidence to the jury which do not mislead and unduly influence the jury and thereby prejudice the rights of the defendant do not constitute misconduct. *Mason v. State,* 132 Neb. 7, 270 N. W. 661; *Dobry v. State, supra; Argabright v. State,* 62 Neb. 402, 87 N. W. 146. Like complaint is made of another statement of lesser consequence which we deem it unnecessary to discuss.

During the trial the state offered in evidence, and the trial court received over objections of defendant's counsel, all the testimony both direct and cross-examination of one Alice Du Charme as given by her under oath in the county court at the preliminary hearing for the same offense. Defendant concedes that she appeared in person at the preliminary hearing, gave testimony under oath, and that defendant met her there face to face. It appears from the record that she was there subjected by defendant's counsel to a long and searching cross-examination. No contention is made that her testimony was not accurately taken in shorthand by a reporter employed by defendant, correctly transcribed by her, and a true copy thereof furnished the county attorney. Does this violate section 11, art. I of the Constitution, which provides in part: "In all criminal prosecutions the accused shall have the right to appear and defend in person or by counsel * * * and * * * meet the witnesses against him face to face"?

Untrammeled courts of England and America have jealously protected this right of a defendant since Lord Coke, in commenting upon Magna Charta shortly after 1600, said: "That the lords ought to hear no evidence but in the hearing and presence of the prisoner." At the same time they have protected the public by refusal to permit a defendant to abuse this sacred right and thereby destroy the public's lawful protection. As early as 1884, in *Hair v. State,* 16 Neb. 601, 21 N. W. 464, this court held that the evidence of a deceased witness upon a former trial of the same party for the same offense, being there brought face

to face with the accused and cross-examined by him, was competent upon a subsequent trial and not in violation of this constitutional right. In *Koenigstein v. State,* 103 Neb. 580, 173 N. W. 603, we said that when a witness, now living, has been previously examined in open court with the opportunity for cross-examination, which has been fully availed of, and the witness cannot be produced for examination at the second trial, the evidence so given upon a former trial for the same offense may be used at the second trial. See, also, *Meyers v. State,* 112 Neb. 149, 198 N. W. 871; *Trobough v. State,* 122 Neb. 7, 238 N. W. 771; *Brunke v. State,* 105 Neb. 343, 180 N. W. 560.

We fail to find in modern decisions or text-books that the courts deem it of any importance whether such testimony was adduced at a preliminary hearing before a committing magistrate or in a former trial for the same offense. In 15 A. L. R., beginning at page 458 and continuing to and including page 564, we find cases and an exhaustive legal and historical discussion of this question, citing English and American cases based upon the common law, statutes and similar constitutional provisions. The almost unanimous rule now is that the testimony of a witness under oath, face to face with defendant in open court in the regular course of a judicial proceeding, with the opportunity given for cross-examination, whether given at a preliminary hearing or in a previous trial for the same offense, is admissible upon a subsequent trial of the cause when the personal attendance of the witness at the trial cannot be had.

The record discloses that the absent witness Alice Du Charme lived with her three small children at Ogalalla, Nebraska, at the time of the preliminary hearing. She later talked with the county attorney several times in his office, assuring him that she and the children would be available at all times as witnesses against defendant at the trial. She desired to place her three children in a boarding school at the Cheyenne Agency in South Dakota. The county attorney knew this, but she and the children left

sooner than anticipated and before the county attorney had knowledge and time or opportunity to serve subpœnas. The defendant's wife, Lillian Jackson, with whom the witness and her three small children lived for some time after the alleged crime, took them out of the state of Nebraska to Cheyenne Agency, South Dakota, in defendant's car. She testifies that the witness Alice Du Charme told her on the road up that "she wouldn't come back, she didn't want to come back." The county attorney thereafter wrote the school and the witness and received replies assuring him that they would all be available for the trial the week of October 24, 1936. The letters are in evidence. A subpœna was issued for service by the sheriff upon the witness and her children. He found the children, but the witness Alice Du Charme had disappeared on October 23, 1936. Diligent search by the sheriff and the police of other cities could not locate her before the trial began on October 27, 1936. It is admitted that she was absent from the state and that no one knew her whereabouts. She was absent from the state without procurement of the prosecution and, upon diligent inquiry, could not be found. 8 R. C. L. 214, sec. 211. The mere fact that the witness was not placed under subpœna before she left the state does not raise a presumption of bad faith or amount to such lack of diligence as, of itself, to forbid the use of the testimony. *State v. Nelson,* 68 Kan. 566, 75 Pac. 505. Whether the prosecution has sufficiently established the unavailability of a witness who testified at the preliminary hearing as foundation for the admission of such testimony upon subsequent trial of the cause is within the sound discretion of the trial court, and error cannot be predicated thereon unless an abuse of discretion is affirmatively shown. *Koenigstein v. State, supra; Meyers v. State, supra;* 8 R. C. L. 216, sec. 213. We must, therefore, conclude that her testimony was properly admitted as a matter of compelling necessity to avoid a failure of justice.

Bearing in mind the complaint by defendant of the insufficiency of the evidence to sustain the verdict of the

jury, we have given careful study of the entire bill of exceptions. We deem it unnecessary to set out the evidence in full in this opinion. It appears that defendant, a brother-in-law of deceased, with whom he was on friendly terms, came into the pool-hall operated by the deceased, and that a heated and violent quarrel quickly ensued, during which threats and epithets freely passed between them, at the climax of which defendant hurried to his car parked in the middle of the street in front of the place, got his gun, a .22 caliber automatic target pistol, and returned. The quarrel continued, and defendant shot three times at deceased, emptying his gun. The first bullet passed through the carotid artery in the neck, and deceased quickly collapsed and was dead. The other two bullets went wild, one striking the wife of defendant in the upper arm. Defendant claims that deceased had a shotgun in his hands into which he pumped a shell and which he pulled to his shoulder and aimed at him before the shooting occurred; that his wife was present and involved in the quarrel, and he shot in self-defense and in defense of his wife. There is evidence to sustain this contention, but, likewise, there is evidence by witnesses for the state that defendant, upon his return with the gun, was in a violent passion and stood in the place shaking his gun and pointing it at deceased; whereupon, deceased said, "Get the hell out of here. I don't want no trouble and go on," and started to a back room, but before he could get inside the door defendant shot him; that, after the deceased was shot, he did reach for and get his shotgun and pumped a shell into the magazine thereof, but collapsed with the gun under him before he could leave the back room. After a consideration of all the evidence we have come to the conclusion that the evidence is sufficient to sustain the verdict.

Section 28-401, Comp. St. 1929, provides: "Whoever shall purposely and of deliberate and premeditated malice * * * kill another; * * * every person so offending shall be deemed guilty of murder in the first degree." Section 28-402, Comp. St. 1929, provides: "Whoever shall purposely

and maliciously, but without deliberation and premeditation, kill another, every such person shall be deemed guilty of murder in the second degree." Section 28-403, Comp. St. 1929, provides: "Whoever shall unlawfully kill another without malice, either upon a sudden quarrel, or unintentionally, while the slayer is in the commission of some unlawful act, shall be deemed guilty of manslaughter." Where an information charges the crime of murder in the first degree, murder in the second degree and manslaughter are included in the charge, and where the evidence and circumstances of the crime are such that different conclusions may properly be drawn therefrom as to the degree, the trial court is without error in submitting the different degrees to the jury for their determination. *Haddix v. State,* 76 Neb. 369, 107 N. W. 781; *Boche v. State,* 84 Neb. 845, 122 N. W. 72; *Denison v. State,* 117 Neb. 601, 221 N. W. 683; *Lillard v. State,* 123 Neb. 838, 244 N. W. 640. The trial court carefully and properly instructed the jury upon all of these issues, including the defendant's theory of self-defense and defense of his wife and we will not disturb their verdict.

The sentence of the court was not excessive and a reduction thereof is not warranted by the evidence. We fail to find considerations in the evidence such as to induce a tendency to be more lenient than the trial court. The trial court saw the witnesses, heard the evidence upon which the jury, under proper instructions, rendered a verdict. The supreme court will not often reduce the sentence imposed by the trial court when, as in the case at bar, the crime was a crime of violence. See *Peterson v. State,* 115 Neb. 302, 212 N. W. 610.

We find no error prejudicial to the defendant, and the judgment (and sentence) of the trial court is

AFFIRMED.