Dwight Eugene ERICKSON,
Petitioner and Appellee,

v.

DIRECTOR, NORTH DAKOTA DEPART-
MENT OF TRANSPORTATION, Re-
spondent and Appellant.

Civ. No. 930116.

Supreme Court of North Dakota.

Oct. 26, 1993.

Jean R. Mullen, Asst. Atty. Gen., Atty. General's Office, Bismarck, for respondent and appellant.

Thomas M. Tuntland, Mandan, for petitioner and appellee.

SANDSTROM, Justice.

We are asked to decide, for purposes of driving under the influence and actual physical control cases, if the State Toxicologist must certify the blood testing equipment in his laboratory is "in good working order." We conclude such specific certification is not required to establish foundation for admission of blood test results.

The Director of the Department of Transportation suspended Dwight Erickson's driving privileges for being in actual physical control of a motor vehicle while under the influence of alcohol. The district court reversed holding the Director's decision was based on improperly introduced evidence. The district court found a lack of proper foundation because the State Toxicologist did not certify his gas chromatograph, used to

test Erickson's blood, was "in good working order."

The Director appeals. We reverse.

I

Erickson was arrested for being in actual physical control of a motor vehicle while under the influence of alcohol.[1] At the time of Erickson's arrest, the arresting officer directed a sample of his blood be drawn, and sent to the State Toxicologist for testing. Erickson was given a temporary operator's permit, which notified him that the Department of Transportation intended to revoke his driving privileges. Erickson submitted a timely request for an administrative hearing to challenge the revocation.

At the hearing, the administrative hearing officer offered various exhibits for the record. Erickson objected to the introduction of Exhibit 7, a listing of the approved chemical testing devices compiled by the State Toxicologist. Exhibit 7 was offered as foundation evidence to prove the accuracy of the gas chromatograph used to measure Erickson's blood-alcohol content. Erickson argued Exhibit 7 should be disallowed because it did not show the date and the results of the last inspection of the gas chromatograph, and it did not state the gas chromatograph was ever inspected and found to be in good working order.

The relevant portion of Exhibit 7 states: "The following gas chromatographs located in the State Toxicology Laboratory are approved by the State Toxicologist as devices to conduct blood alcohol analysis, in accordance with Section 39–20–07 of the North Dakota Century Code. As these instruments are inspected one or more times each day, separate inspection is not conducted on a yearly basis."

The hearing officer admitted the exhibit into evidence, noting Erickson's objection for the record. Erickson offered no evidence or testimony regarding the reliability or accuracy of the gas chromatograph. The hearing officer found there were articulable grounds to stop Erickson and to believe he had violated N.D.C.C. § 39–08–01. The hearing officer found Erickson's blood test had been fairly administered and Erickson had a blood-alcohol content of over .10 percent. The hearing officer suspended Erickson's driving privileges for 364 days.

Erickson appealed to the district court, claiming Exhibit 7 lacked probative value because it did not show the date or the results of the last inspection of the gas chromatograph. The district court agreed with Erickson, and in a memorandum opinion held:

"Exhibit 7 is prepared by the State Toxicologist and certifies as to the inspection and working order of the chemical testing devises [sic] in the state. In regard to the gas chromatograph used in this case, the statement made is that the instruments are 'approved by the State Toxicologist as devises [sic] to conduct blood alcohol analysis' and adds that these 'instruments are inspected one or more times each day, separate inspection is not conducted on a yearly basis.' Unlike the statement made on behalf of the intoxilyzers which indicate that they have been found to be in good working order by the inspector, there is no statement indicating whether the machine used in this case was in good working order. It merely states that it is inspect-

---

1. N.D.C.C. § 39–08–01(1) (Supp.1991) provides:
    "*39–08–01. Persons under the influence of intoxicating liquor or any other drugs or substances not to operate vehicle—Penalty.*
    "1. A person may not drive or be in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if any of the following apply:
    "a. That person has a blood alcohol concentration of at least ten one hundredths of one percent by weight at the time of the performance of a chemical test within two hours after the driving.

    "b. That person is under the influence of intoxicating liquor.

    "The fact that any person charged with violating this section is or has been legally entitled to use alcohol or other drugs or substances is not a defense against any charge for violating this section, unless a drug which predominately caused impairment was used only as directed or cautioned by a practitioner who legally prescribed or dispensed the drug to that person."

ed. This fails to meet the standard set by the Supreme Court in *State v. Ghylin,* or *State v. Salhus,* and as required by Section 39–20–07 of the North Dakota Century Code. Although the statement of the State Toxicologist, may cover the issue of the regular inspection, it fails to state whether the machine is in good working order or not. Accordingly, the objection to the introduction of Exhibit 7 was properly made and the State has failed to meet the requirements of 39–20–07 for use as evidence in the District Court. Accordingly, the decision of the Hearing Officer is in all things reversed. . . ."

## II

■ An appeal from an administrative hearing officer's decision involving a license suspension under N.D.C.C. § 39–20–04.1 is governed by the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32. *Hammeren v. North Dakota State Highway Com'r,* 315 N.W.2d 679, 683 (N.D.1982). This Court examines the record of the administrative agency rather than the findings of the district court. *Holler v. Dept. of Transp. Director,* 470 N.W.2d 616, 617 (N.D.1991). Since this appeal involves the interpretation of a statute, a legal question, this Court will affirm the agency's order unless it finds the agency's order is not in accordance with the law. *See* N.D.C.C. §§ 28–32–21 and 28–32–19.

## III

■ This case is governed by our decisions in *State v. Erickson,* 241 N.W.2d 854 (N.D.1976), and *State v. VandeHoven,* 388 N.W.2d 857 (N.D.1986). In *Erickson,* we explained that the "fairly administered" foundation requirements of *State v. Salhus,* 220 N.W.2d 852, 857 (N.D.1974), apply only to laypersons operating alcohol detection devices, and not to "experts." *Erickson* at 865. Our *Erickson* decision was based on N.D.C.C. § 31–11–03(15), which gives the official acts of the State Toxicologist a disputable presumption of regularity, until contradicted by other evidence. *Erickson* at 865.

In *VandeHoven,* we held the inspection and certification requirements of N.D.C.C. § 39–20–07(6) apply to *"field* inspectors of *breath* -testing equipment and its operation, not to expert, laboratory blood testing." *VandeHoven* at 859 (emphasis in original). In this case, the district court erred by excluding Exhibit 7 based on *Salhus* and the certification requirements of § 39–20–07(6).

■ The proper requirements for admission of Exhibit 7 are found in N.D.C.C. § 39–20–07(5) [2] which provides:

"The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the state toxicologist, and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist. The state toxicologist is authorized to approve satisfactory devices and methods of chemical analysis and determine the qualifications of individuals to conduct such analysis, and shall issue a certificate to all qualified operators who exhibit the certificate upon demand of the person requested to take the chemical test."

Erickson does not challenge the procedure used to obtain his blood sample, the method used to test his blood sample, or the qualifications of the person who performed the analysis on his blood sample. He provides no evidence to overcome the "disputable presumption of regularity." Erickson only challenges the gas chromatograph used to analyze his blood. Section 39–20–07(5) requires devices used to analyze blood be approved by the State Toxicologist. This requirement has

---

**2.** N.D.C.C. § 39–20–07(8) (Supp.1991) provides: "A certified copy of the analytical report of a blood, urine, or saliva analysis issued by the office of the state toxicologist must be accepted as prima facie evidence of the results of a chemical analysis performed under this chapter."

Unlike subsection 5, which controls the foundation requirements for valid testing procedures and methods, subsection 8 controls the admissibility of the report listing the results of the test. *See Frost v. North Dakota Dept. of Transp.,* 487 N.W.2d 6, 8 (N.D.1992); *Salter v. Hjelle,* 415 N.W.2d 801, 805 (N.D.1987).

been met. Exhibit 7 certifies that "the gas chromatographs located in the State Toxicology Laboratory are approved by the State Toxicologist as devices to conduct blood alcohol analysis." Although the State Toxicologist is not required to certify, under § 39–20–07(5), that the gas chromatographs used in his office are "in good working order," confusion could be avoided if the State Toxicologist included such language in his certification.

## IV

In his appeal to the district court, Erickson also argued the Director lacked jurisdiction to revoke his license because there was no evidence that the analytical report from the office of the State Toxicologist was forwarded to the Director of Transportation within five days. The district court did not reach this issue. We may review issues involving subject matter jurisdiction on our own initiative. *See Larson v. Dunn,* 474 N.W.2d 34, 39 (N.D.1991). We hold that N.D.C.C. § 39–20–03.1(3) does not require the analytical report be forwarded within five days.

At the time of Erickson's arrest, § 39–20–03.1(3) (Supp.1991) provided:

"The law enforcement officer, within five days of the issuance of the temporary operator's permit, shall forward to the commissioner a certified written report in the form required by the commissioner and the person's operator's license taken under subsection 1 or 2. If the person was issued a temporary operator's permit because of the results of a test, the report must show that the officer had reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while in violation of section 39–08–01, or equivalent ordinance, that the person was lawfully arrested, that the person was tested for blood alcohol concentration under this chapter, and that the results of the test show that the person had a blood alcohol concentration of at least ten one-hundredths of one percent by weight. *In addition to the operator's license and report, the law enforcement officer shall forward to the commissioner a certified*

*copy of the operational checklist and test records of a breath test and a copy of the certified copy of the analytical report for a blood, saliva, or urine test for all tests administered at the direction of the officer.*" (Emphasis added.)

Erickson contends N.D.C.C. § 39–20–03.-1(3) requires the law enforcement officer to forward to the Director, within five days of the issuance of the temporary operator's permit, the certified written report, the person's operator's license, *and* a certified copy of the analytical report. In support of his interpretation of § 39–20–03.1(3), Erickson relies on N.D.C.C. § 39–20–03.2(3) (Supp.1987), which outlines the procedures for non-resident operators. At the time of Erickson's arrest, § 39–20–03.2(3) provided, in part:

"The law enforcement officer, within five days of issuing the temporary operator's permit, shall forward to the commissioner a certified written report in the form required by the commissioner and a certified copy of the operational checklist and test records of a breath test and a copy of the certified copy of the analytical report for a blood, saliva, or urine test for all tests administered at the direction of the officer."

Erickson contends § 39–20–03.2(3) reflects the desire of the legislature that all analytical reports be forwarded within five days. The Director contends just the opposite, the legislature used different language in the two statutes because it intended different requirements for non-resident drivers. The requirement that the analytical report be sent to the Director was added to both statutes at the same time. *See* S.L.1985, ch. 429 §§ 13 and 14. The legislative history of §§ 39–20–03.1(3) and 39–20–03.2(3) is not helpful in discerning the legislature's intention.

In resolving the ambiguity in § 39–20–03.1(3), we are guided by *Schwind v. Director, Dept. of Transp.,* 462 N.W.2d 147, 150 (N.D.1990). In *Schwind,* we explained:

"While the jurisdiction of an administrative agency is dependent upon the terms of a statute, these terms must be construed logically so as not to produce an absurd result.... Where adherence to the letter of the law would result in an absurdity, we

have noted that effect will be given the real intention even though contrary to the letter of the law."

(Citations omitted.)

Based on the rationale of *Schwind,* any ambiguity in the jurisdiction requirements of § 39–20–03.1(3) should be construed in favor of the clear purpose of the statute, which is to protect the public by preventing persons from driving under the influence. *See Schwind* at 150; *Ding v. Dir., North Dakota D.O.T.,* 484 N.W.2d 496, 500 (N.D.1992). Although the analytical report must be forwarded before the Director has jurisdiction, N.D.C.C. § 39–20–03.1(3) does not require the analytical report be forwarded within five days.

The district court's judgment is reversed, and the Department's decision suspending Erickson's driver's license for 364 days is reinstated.

VANDE WALLE, C.J., and NEUMANN, LEVINE and MESCHKE, JJ., concur.